IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**AUBREY HARVEY**                                                                              **PLAINTIFF**

V.                                    No. 4:24-CV-00177-JM-ERE

**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**                                              **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge James M. Moody, Jr. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Moody can adopt this RD without independently reviewing the record.

**I.     Background**

On May 9, 2016, Mr. Aubrey Harvey filed an application for benefits due to epilepsy and seizures. *Tr. 538, 613*.

In October 2018, the first Administrative Law Judge ("ALJ") issued an adverse ruling. *Tr. 214-234*. Since then, there have been two remands by the Appeals Council. *Tr. 237-239, 270-271*. Following the second remand, an ALJ held a hearing on July 12, 2022, where Mr. Harvey appeared with his lawyer, and the ALJ heard

1

testimony from Mr. Harvey, Ms. Sara Barney,[1] and a vocational expert ("VE"). *Tr. 135-172*.[2] On February 20, 2023, the ALJ issued a decision finding that Mr. Harvey was not disabled. *Tr. 15-31*. The Appeals Council denied Mr. Harvey's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-6*.

Mr. Harvey, who was thirty-five years old at the time of the July 2022 hearing, completed the 11th grade and has no past relevant work experience. *Tr. 107-108, 142*.

## II. The ALJ's Decision[3]

The ALJ found that Mr. Harvey had not engaged in substantial gainful activity since May 9, 2016, the application date. *Tr. 17*. The ALJ also concluded that Mr. Harvey had the following severe impairments: epilepsy/seizures, closed right ankle fracture, obesity, borderline intellectual function, depression, anxiety, and post-traumatic stress disorder. *Id.* However, the ALJ concluded that Mr. Harvey did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 18*.

---

[1] Ms. Barney has been friends with Mr. Harvey since they were 13 years old and considers him family. After Mr. Harvey's grandmother died, he needed a place to live and moved in with Ms. Barney's family. *Tr. 122, 128*.

[2] There were four hearings on Mr. Harvey's application for social security benefits (7/25/2017, 03/12/2020, 01/06/2021, 7/12/22) because of the remands. *Tr.41-134*.

[3] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

According to the ALJ, Mr. Harvey had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) no climbing ladders, ropes, or scaffolds; (2) no exposure to unprotected heights, moving mechanical parts, deep water, open flames, motor vehicles, or extreme heat; (3) only simple, routine, repetitive work; (4) only usual work situations and routine work changes; and (5) occasional social interaction with the public. *Tr. 22.*

In response to hypothetical questions incorporating the above limitations, the VE testified that a substantial number of potential jobs were available in the national economy, including small products assembler, cleaner housekeeper, and mail room clerk. *Tr. 30, 166.* Accordingly, the ALJ determined that Mr. Harvey was not disabled.

### III. Discussion

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider

not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Mr. Harvey's Arguments for Reversal

Mr. Harvey contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ: (1) did not fully and fairly develop the record; (2) erred at Step Three; (3) improperly assessed Mr. Harvey's subjective complaints; and (4) determined an erroneous RFC. *Doc. 7 at 4-5*. After carefully reviewing the record as a whole, I recommend reversing the Commissioner's decision and remanding this case.

### C. Analysis

Mr. Harvey asserts four reasons for reversal. The first one is meritless,[4] but the remaining three all involve in the ALJ's failure to adequately account for Mr. Harvey's mental impairments.

---

[4] There are two problems with Mr. Harvey's argument that the ALJ failed to develop the record because she "only ordered a neurological and normal psychological exam." *Id. at 11*. First, although Mr. Harvey requested a neuropsychological assessment, he conceded at the hearing that "DDS is not paying for that . . . ." In fact, the Program Operations Manual Systems expressly prohibits such an exam: "Do not purchase neuropsychological batteries. However, consider the results of neuropsychological batteries when they are part of the medical evidence of record." DI 24583.050 Using Psychological Tests to Evaluate Mental Disorders, SSA POMS DI 24583.050.

4

As to Mr. Harvey's contention that the ALJ erred by rejecting his "credibility as to his intellectual disability based upon boilerplate findings" about his pain complaints, the Commissioner's response is simply that "the ALJ applied the proper legal standard, made express findings, and provided valid reasons for his assessment of Plaintiff's subjective complaints." *Doc. 9 at 16*. But Mr. Harvey makes a valid argument, which is strengthened by his two other arguments, as discussed below.

The ALJ's opinion focused heavily on discrediting Mr. Harvey's pain complaints,[5] while downplaying the primary issue in this case – Mr. Harvey's intellectual impairments. The ALJ's detailed discussion of pain arguably related only to a healed ankle wound. But Mr. Harvey's intellectual impairments, not his pain, are his biggest hurdles to gainful employment.

---

Second, Mr. Harvey now takes issue with the exam the ALJ ordered, but, at the hearing, counsel did not object when the ALJ said she was "going to request a separate neurological CE." *Tr. 171*.

[5] For example, the ALJ's findings on this point include the following:

- [T]he claimant's degree of <u>pain relief seeking behavior and treatment</u> is not indicative of a degree of pain that would limit activities beyond the scope of the residual functional capacity as determined in this decision.

- [T]he claimant's <u>pain appears to be well controlled</u> without prescription or over-the-counter medications.

- [T]here is <u>no record that he takes anything for pain.</u>

- [T]he undersigned finds that <u>the pain and discomfort factor is not of such persistence or severity as to be disabling.</u>

*Tr. 27 (emphasis added).*

5

Several things stand out about Mr. Harvey's intellectual impairments. The ALJ found that Mr. Harvey has only moderate limitations in his ability to maintain pace. This appears to be based primarily, if not solely, on Dr. John Faucett's 2022 exam noting that although Mr. Harvey "worked very slowly on timed tests of Processing Speed, he was able to answer questions on the Arithmetic subtest rapidly." *Tr. 20, 1341, 1343*. The ALJ gave Dr. Faucett's opinion "great weight" and found it consistent with the record. *Tr. 29.* Oddly, the ALJ appears to interpret the second part of the analysis as *but* Mr. Harvey "was able to answer questions on the arithmetic subset rapidly." *Tr. 20*. Answering rapidly does not mean Mr. Harvey answered correctly. Notably, Mr. Harvey's arithmetic subtest scaled score was a 3, which is a very poor performance on this section of the testing.

Dr. Steve Shry's 2017 report is consistent with Dr. Faucett's opinion. Dr. Shry found that Mr. Harvey was "significantly impaired in his ability to complete tasks within acceptable time frames." *Tr. 987.* Yet, the ALJ gave Dr. Shry's opinion only some weight. *Tr. 28*.

Both Dr. Faucett and Dr. Shry concluded that Mr. Harvey was not exaggerating his symptomology. *Tr. 987, 1343*. Both also found that Mr. Harvey tested at borderline intellectual functioning. However, Dr. Faucett found that the total IQ score might underrepresent Mr. Harvey's abilities. The ALJ relied heavily on Dr. Faucett's suspicion that Mr. Harvey's full-scale WAIS-IV score of 65 (and

subset scores mostly 5 or below) "likely underestimate [Mr. Harvey's] intellectual ability to some extent." *Tr. 26, 1341*. Whether Mr. Harvey's IQ is borderline or barely above does not change the fact that he "worked very slowly," had a "processing speed" of 62, and is "significantly impaired in his ability to complete tasks within acceptable time frames" because of his mental impairments. *Tr. 987*.

In her 2021 opinion, the same ALJ noted that Mr. Harvey "tried to work at Cat's Claws but was unable to keep up with the quota and kept making errors." *Tr. 253*. In her 2023 opinion, the ALJ did not address Mr. Harvey's inability to meet quota. However, the comments from the 2021 opinion are consistent with the findings by Dr. Faucett and Dr. Shry, which both support Mr. Harvey's subjective complaints about being unable to perform a job.

The ALJ also discussed Dr. Sonia Cox's September 2022 exam, which noted that Mr. Harvey had "some difficulties with commands that required left-right orientation" and "severely decreased calculations and related attention to tasks" in the exam. *Tr. 25, 28, 1331, 1336*. Dr. Cox also concluded that Mr. Harvey's "intellectual functioning level [would] impact his ability to obtain and maintain employment." *Tr. 1336*. The ALJ made no mention of this relevant finding or its consistency with the opinions of Dr. Shry and Dr. Faucett. Nor did the ALJ address the entirely consistent testimony of Ms. Barney, who lives with Mr. Harvey and observes him daily.

7

The ALJ noted that Mr. Harvey could perform counting serial sevens on one exam. *Tr. 20*. Yet, on another exam, Mr. Harvey was unable to correctly recite either serial sevens or serial twos. *Tr. 1331*.

Mr. Harvey's mental impairments and their real-world effects must be considered in a work-like setting, not in the abstract. At the very least, an ALJ must explain how Mr. Harvey could overcome his mental impairments and still be able to perform the jobs cited by the VE. Again, the ALJ found only moderate limitations in concentrating, persisting, or maintaining pace. *Tr. 20*. Then, with minimal explanation, the ALJ limited Mr. Harvey to simple, routine, repetitive tasks, and the ability to respond to usual work situations and routine work changes. *Tr. 22*. These limitations do not account for Mr. Harvey's well-documented issue of maintaining pace. As noted above, the ALJ recognized this very issue (Mr. Harvey "worked very slowly on the timed tests of the Processing Speed composite") but summarily dismissed it because Mr. Harvey "answered quite rapidly during the Arithmetic subtest." *Tr. 1343*. But the ability to quickly give a wrong answer to a math question does not resolve Mr. Harvey's clearly established pace problem. On this record, the ALJ provided insufficient analysis of Mr. Harvey's pace limitations.

Ms. Barney testified at the hearing about Mr. Harvey's activities of daily living ("ADLs") and his seizures. *Tr. 122-129*. She testified that although Mr. Harvey had some independence, he needed constant reminders and was, preferably,

not left alone at home. Even though her testimony was entirely consistent with the medical evidence in the record, the ALJ dismissed it, noting that Ms. Barney was "not medically trained to make exacting observations as to the date, frequency types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms." *Tr. 29*. Ms. Barney's observations required no medical expertise; rather, they were observations by someone who interacts with Mr. Harvey daily and is in a position to observe firsthand the effects of his mental impairments. Ultimately, the ALJ said she would consider Ms. Barney's observations to the extent that they were consistent with the record. *Tr. 29*. The purported reason for discounting them at all is troubling, especially since Ms. Barney's observations were entirely consistent with the record.

Mr. Harvey, who first started drawing benefits in second grade,[6] is an adult individual with an 11th grade education (in special education classes), with borderline intelligence, poor reading and math skills, who has never lived alone, can't drive, has to have others explain the mail he receives from Social Security, requires constant reminders of his ADLs, plays only simple video games, goes fishing, and watches TV but has problems following the plot. *Tr. 145, 151-152, 783*.

---

[6] There were breaks in Mr. Harvey's receipt of benefits, but they appear to be unrelated to him actually qualifying for benefits.

Considering these issues along with the nominal assessment of Mr. Harvey's pace, the ALJ failed to adequately explain her reasons for not applying a more restrictive RFC.

## IV.  Conclusion

As set out above, the ALJ's RFC failed to adequately consider the record as a whole. Accordingly, the ALJ's decision is not supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED, and the case be REMANDED for further review.

Dated 20 August 2024.

_____
UNITED STATES MAGISTRATE JUDGE